UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: _____

**DEREK T. HORNE**

    **Plaintiff,**

vs.

**ERIC HOLDER, Attorney General
of the United States of America,**

    **Defendant.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL
<u>INJUNCTIVE RELIEF REQUESTED</u>**

Plaintiff, Derek T. Horne ("Horne"), sues Defendant, Eric Holder, Attorney General of the United States of America, ("Attorney General"), and alleges:

**JURISDICTION**

1. This court has jurisdiction of the claims in this complaint pursuant to Section 501 of the Rehabilitation Act of 1973, 29 U. S. C. § 791 (Rehabilitation Act) and Section 717 of the Civil Rights Act of 1964, as amended, and 42 U. S. C. § 2000e *et seq.* (Title VII).

2. Plaintiff has complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964, as amended, including having exhausted or being excused of any required administrative remedies.

**PARTIES**

3. The Federal Bureau of Prisons ("BOP") in Miami, Florida is a Department of Justice ("DOJ") Federal Detention Center ("FDC-Miami") with related services. It was directed by a Warden, who at times relevant was Linda McGrew ("McGrew") (black). Edwin Perez

1

("Perez") (Hispanic) was at times relevant the Associate Warden. Jose Velazquez ("Velazquez") (Hispanic) was at times relevant the General Foreman at FDC-Miami and plaintiff's first-line supervisor. Gary Hammond ("Hammond") (white) was at times relevant the Facilities Manager and plaintiff's second-line supervisor.

4. Each of the employees of the FDC-Miami described herein was employed by the Defendant or BOP and was acting within the course and scope of his or her employment with the Defendant or BOP at the time of the conduct described herein.

5. Horne, a resident of Miami, Florida, is, and at all relevant times was, an electronics technician, GS-11 for BOP at the FDC-Miami. He has been employed at FDC-Miami from 1996 to the present.

## GENERAL ALLEGATIONS

6. On or about October 2009, plaintiff received work-related injuries which were disabling as they limited his ability to lift items and climb ladders.

7. On the bases of race (Black), color (Black) and reprisal (prior EEO activity) the plaintiff was treated disparately when the Facilities Manager denied plaintiff was injured on the job and provided misleading information when processing plaintiff's claim.

8. On or about January, 2010, plaintiff was placed on light duty because of his medical status. Prior to plaintiff being on medically restricted status, several co-workers were also on medical status. None of the co-workers had their physical movement in the building restricted. Horne was restricted to the second floor. Horne was restricted from the staff cafeteria. Horne was restricted from his former work area, told he was no longer part of the department and told he was not entitled to review files that concern electronics. None of his co-

workers were told they were no longer part of the department. Prior to Horne receiving an eight-point letter, none of them had been given an eight-point letter. Of the group on temporary light duty status, Horne was the only Black.

9. On or about February, 2010, plaintiff requested the Electronic Equipment Upgrade Project file from his supervisor. Subsequently, plaintiff made the same request of all upper level managers until on May 30, 2010 he was advised he would be permitted to review the file upon his return to full duty status.

10. On the bases of race (Black), color (Black) and reprisal (prior EEO activity) on June 1, 2010, plaintiff discovered that his white co-worker was permitted to attend training while plaintiff had requested to attend training that the Facilities Manager had denied.

11. On the bases of race (Black), color (Black) and reprisal (prior EEO activity), the plaintiff was treated disparately when on or about July 1, 2010, he was given a letter stating that the letter submitted by his doctor on March 25, 2010 did not contain all the information requested. It further stated if he did not submit a physician's response by July 13, 2010 he would be required to return to his normal position from his light duty or use leave.

12. On the bases of race (Black), color (Black), reprisal (prior EEO activity), disability, and hostile work environment the plaintiff was treated disparately when on July 13, 2010, his first line supervisor presented him an interim evaluation containing the word "satisfactory" written several times, but did not contain the elements being evaluated. When questioned as to what were the elements for which "satisfactory" was given, his supervisor did not know and stated the evaluation would be completed another day. In administering the interim evaluations for the remainder of the department, Velazquez and Hammond called each

person into the office, discussed each element of the evaluation, offered direction on areas of improvement and encouragement in the areas where they exceeded.

13.     On the bases of race (Black), color (Black), disability, reprisal (prior EEO activity), and hostile work environment the plaintiff was treated disparately when on June 1, 2010, and June 23, 2010, Murray assigned the plaintiff additional work orders to process in addition to his regular duties.

14.     On the bases of race (Black), color (Black), disability, reprisal (prior EEO activity), and hostile work environment, the plaintiff was treated disparately when on or about July 27, 2010, plaintiff gave his Voluntary Leave Bank Program ("VLBP") application to Velazquez, his supervisor. This was necessitated by issues he was having with his hearing. On or about August 2, 2010 the VLBP application was provided to Human Resources by plaintiff for forwarding to the VLBP. That was not done. Upon inquiry plaintiff was told he had to use the local voluntary leave transfer program first. Plaintiff was also told a voluntary leave transfer committee had reviewed his application and denied it. Subsequently, plaintiff submitted his application to the VLBP himself and it was approved. In addition, plaintiff learned there was no voluntary leave bank transfer committee at his facility. Another employee, a nurse, had her VLBP application approved immediately. The delay and failure to process Horne's application caused him to lose pay.

15.     On the bases of race (Black), color (Black), and reprisal for prior EEO activity the plaintiff was treated disparately when on August 3, 2010, his first and second line supervisors instructed the timekeeper to place Horne on AWOL. Horne notified management in writing with a doctor's note that he required FMLA, and was requesting leave without pay (LWOP) or advanced leave, whichever past practice dictated for 80.75 hours. He was granted only a portion

of the leave requested (24 hours) and given AWOL for .75 hours. Government regulations provide for up to twelve weeks of FMLA leave in a fiscal year.

16. On the bases of race (Black), color (Black), reprisal (prior EEO activity) disability and hostile work environment, the plaintiff was treated disparately when in July or August, 2010, the Warden made unwarranted comments to him stating she did not believe in giving accommodation to non-work related injuries. She further stated that Horne's presence in a TAD position was adverse to what she was trying to do.

17. On the bases of race (Black), color (Black), reprisal (prior EEO activity) and disability, the plaintiff was treated disparately when his time and attendance records were transferred from the timekeeper to an individual in Human Resources. This resulted in him not being paid for his LWOP time when his VLBP grant came in. Subsequently, his time and attendance records were returned to the control of the timekeeper.

18. On the bases of race (Black), color (Black), disability and reprisal (prior EEO activity) the plaintiff was treated disparately when on numerous occasions personnel in the Warden's office and in Human Resources refused to accept requested documentation from him and refused to sign receipts for the documents.

19. On the bases of race (Black), color (Black), disability and reprisal (prior EEO activity) the plaintiff was treated disparately when from March, 2010, he has not been able to determine his employment status. Management has not provided him with a letter outlining the nature of his employment/position or the requirements of his "temporary" position. His written requests to the Warden and other management officials have received no response.

20. On the bases of race (Black), color (Black), disability and reprisal (prior EEO activity) the plaintiff was treated disparately when since January, 2010, the medical restrictions

were not violated by his temporary duty assignment, but Horne was not allowed to perform any of the duties of his job that were not restricted in areas of the building that were not restricted. Horne has been restricted from access to electronic project files and documents for which he is entitled to have access. Similarly situated employees on light duty were permitted to continue to perform some portion of their primary job description.

## Count I

### (Race and Color Discrimination)

21. Plaintiff, Derek T. Horne, sues Eric Holder, as Attorney General of the United States of America, the Department of Justice, Bureau of Prisons for racial discrimination under Title VII.

22. Plaintiff incorporates and realleges paragraphs 1 through 20.

23. As a direct and proximate result of the foregoing conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by the Defendant because of race (Black) and color (Black).

24. The above discriminatory actions were taken by the supervisory personnel within the BOP in order to deprive the Plaintiff of employment and other employment action because of his race and color.

25. The Defendant has intentionally maintained these discriminatory and unlawful practices to the detriment of the Plaintiff.

26. The above-referenced actions have created an intolerable hostile work environment.

27. The Defendant at all relevant times knew, or should have known, of the above-referenced discrimination against the Plaintiff.

28. The Defendant has failed to take necessary action to prevent or correct the complaint of discrimination and, in fact, ratified such conduct.

29. The Defendant, through the Plaintiff's managers and supervisors has engaged in, directed or ratified conduct and denied and frustrated the Plaintiff's efforts to obtain relief under Title VII.

30. The Defendant, through acceptance of the complained of conduct, has fostered an attitude among supervisors at FDC- Miami that racial discrimination and color discrimination are acceptable employment practices.

31. Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, the Plaintiff has been and continues to be denied his rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

32. As a result of the foregoing, the Plaintiff has been damaged. Those damages include, but are not limited to loss of pay; loss of benefits; loss of an amicable working environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to professional reputation; and humiliation, degradation, embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer these damages absent relief from this Court.

33. Plaintiff has satisfied all conditions precedent to filing of this suit or he has been prevented by the Defendant from satisfying such conditions precedent, or he is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on

all issues so triable.

## Count II

### (Retaliation)

34. Plaintiff, Derek T. Horne, sues Eric Holder, as Attorney General of the United States of America, the Department of Justice, Bureau of Prisons, for retaliation under Title VII.

35. Plaintiff incorporates and realleges paragraphs 1 through 33.

36. Plaintiff engaged in EEO activity which is protected under Title VII.

37. The Defendant was aware of each of the Plaintiff's protected or EEO activities under Title VII.

38. The aforesaid adverse employment actions; other adverse actions; misconduct; and other conduct, acts and omissions to the Plaintiff's detriment; as well as other adverse employment actions and conduct, were all taken (or failed to be taken) by administrators and managing and supervisory personnel at FDC- Miami in retaliation for the protected or EEO activity of the Plaintiff including those set forth above.

39. As a direct and proximate result of the protected or EEO activity, Plaintiff has suffered the adverse employment actions and other adverse actions, including these set forth above.

40. FDC- Miami has intentionally maintained these retaliatory and unlawful practices to the detriment of its employees.

41. The Defendant at all relevant times knew or should have known of the retaliatory actions being taken against the Plaintiff.

42. The Defendant failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct.

43. The Defendant, through the supervisors of the Plaintiff, including McGrew, Perez, Velazquez, Hammond and others, has engaged in, directed, and/or ratified retaliatory conduct and has frustrated the Plaintiff's efforts to obtain relief under Title VII.

44. The Defendant, through acceptance of such conduct, has fostered an attitude among administrators, managers and supervisors in FDC- Miami that retaliation against employees in order to discourage protected EEO activity is an acceptable employment practice by administrators, managers and supervisors at FDC- Miami.

45. Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Plaintiff has been and continues to be denied his right to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

46. As a result of the foregoing, Plaintiff has been damaged. Such damages include, but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

47. Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## Count III

### (Hostile Work Environment)

48. Plaintiff, Derek T. Horne, sues Eric Holder, as Attorney General of the United States of America, the Department of Justice, Bureau of Prisons for retaliatory hostile work environment.

49. Plaintiff incorporates and realleges paragraphs 1 through 47.

50. The aforesaid actions and conduct have created an intolerable hostile work environment.

51. As a result of the foregoing, Plaintiff has been damaged. Such damages include, but are not limited to payment of attorneys' fees and legal costs, loss of an amicable work environment, humiliation, anxiety, degradation, embarrassment, physical injury or illness, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

52. Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## Count IV

### Failure to Reasonably Accommodate Disability

53. Plaintiff, Derek T. Horne, sues Eric Holder, as Attorney General of the United States of America, the Department of Justice, Bureau of Prisons for failure to reasonably

accommodate a disability under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 (Rehabilitation Act) and Section 717 of the Civil Rights Act of 1964, as amended.

54. Plaintiff incorporates and realleges paragraphs 1 through 52.

55. As a result of the foregoing, Plaintiff has been damaged. Such damages include, but are not limited to payment of attorneys' fees and legal costs, loss of an amicable work environment, humiliation, anxiety, degradation, embarrassment, physical injury or illness, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

56. Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests reasonable accommodation, prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

### Count V

### (Injunctive Relief)

57. Plaintiff, Derek T. Horne, sues Eric Holder, as Attorney General of the United States of America, the Department of Justice, Bureau of Prisons.

58. Plaintiff incorporates and realleges paragraphs 1 through 56.

59. Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

60. There is: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless an injunction issues; (3) the threatened injury to the Plaintiff is

greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, is issued, will not disserve the public interest.

61.  Plaintiff requests the Court award his attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct:

a.  Violating Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 (Rehabilitation Act) and Section 717 of the Civil Rights Act of 1964, as amended, Title VII or the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as described above including retaliation against Plaintiff for protected or EEO activity and discrimination based on race and disability.

b.  Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demands trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, Derek T. Horne, hereby demands a trial by jury on all issues so triable.

Dated: September 26, 2012

Respectfully submitted,

Joseph D. Magri
Florida Bar No.: 0814490
Email: jmagri@merklemagri.com
Merkle Magri & Meythaler, P.A.
5601 Mariner St., Suite 400
Tampa, FL 33609
Tel. (813) 281-9000
Fax.: (813) 281-2223
Attorneys for Plaintiff Derek T. Horne