UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 12-CV-23507-Martinez/McAliley

DEREK T. HORNE

      Plaintiff,

vs.

ERIC HOLDER, Attorney General
of the United States of America,

      Defendant.
_____/

## JOINT PRETRIAL STIPULATION

Pursuant to Fed.R.Civ.P.26(a)(3) S.D.Fla. Local Gen. Rule 16.1(e), Plaintiff and Defendant, by and through their undersigned counsel, hereby submit their joint pretrial stipulation.

**1. A concise statement of the case prepared by each Party in the Action.**

Plaintiff has filed a complaint, the latest being the Third Amended Complaint. [D.E. 23]. He alleges that he worked for the Defendant from 1996. Plaintiff contends that the Defendant committed violations of Section 501 of the Rehabilitation Act of 1973, 29 USC § 791, Sec 717 of the Civil Right Act of 1964 as amended, and 42 USC § 2000e *et seq* (Title VII) 42 USC § 2000e-16, alleging Race and Color Discrimination in Count I, Retaliation in Count II, Disability Discrimination and Failure to Reasonably Accommodate Disability in Count IV, Hostile Work Environment in Count V, and seeks Injunctive Relief in Count VI. The Plaintiff has elected to drop Count III for age discrimination. The Plaintiff states that he was subjected to race, color and disability discrimination, as well as retaliation and a harassing hostile work environment.

The Defendant denies liability on all counts.  [D.E. 24].

## Plaintiff's Statement of the Case

Derek Horne began to work at the Bureau of Prisons (BOP) in 1996.  He believed he was being discriminated against on the basis of race and color beginning in 2008 by his supervisor Gary Hammond.  These allegations included, but were not limited to, disparate treatment in favor of white employees over non-whites in assignments, duties, training and awards.

Following his initial claims, he alleges he was retaliated against for his EEO activity.  When Mr. Horne was injured, on the job, Mr. Hammond opposed his Office of Workers' Compensation Programs claim, denying he was injured on the job.  Later, Mr. Horne alleged he was subjected to a number of acts including but not limited to: excluding him from his job; prohibiting him from being a part of the facilities department or participating in its training or other activities; misuse of medical records; being moved around and ultimately being sent home without pay or benefits in an action which did not follow rules and regulations applicable to federal employees.  Mr. Horne was not provided with notice, an opportunity to respond, representation, rebuttal, or an opportunity to appeal this action.  He was not given a chance to offer oral or written evidence.  Moreover, if the defendant had any basis to remove his duties, he would have been entitled to severance pay or discontinued service retirement which he was not given.  He alleges all of these things are fundamental violations of his statutory and regulatory rights.

Mr. Horne also alleges he was a qualified person with a disability.  He requested reasonable accommodations, but alleges there was no interactive process concerning his receiving a job accommodation or reassignment to a qualifying job.  He was ordered into temporary duty in January, 2010.  From that time until April 23, 2012, he performed the

temporary duty assignment, doing essential work for the BOP at a fully successful level.  Mr. Horne alleges he was discriminated against in a number of acts including but not limited to:  his duties, the handling of his medical records, the denial or obstruction of FMLA and other leave requests for medical treatment; he was completely separated from his facilities department duties; denied training for duties; moved around; denied Voluntary Leave Bank Program leave he had paid for; had his medical records compromised; and ultimately was sent home without pay or benefits on April 23, 2012 until October 19, 2013, in violation of rules and regulations which should have applied to him.

Mr. Horne alleges he was also subjected to a hostile work environment based upon retaliation, disability, race and color.  In addition to the above acts he was subjected to: isolation and ostracism, repeated demands he disavow or get his doctors to disavow his disability; a course of fitness for duty examinations which, in a 3 month period, reached completely opposite results. Despite the fact that he was working in a job that did not require him to respond to institutional emergencies, and the fact that, on April 23, 2012, all key Agency personnel stated he was a qualified person with a disability, his duties were taken away from him and he was sent home without pay.  This was done in a humiliating fashion.  While an employee until October 19, 2013, when he retired, he was not allowed to go to work and he was not given pay or benefits.

He alleges that he suffered significant damages in terms of lost pay, benefits, retirement income and compensatory and emotional damages from the above conduct.

He alleges that the evidence will show that the Bureau of Prisons cannot offer non pretextual reasons for the various adverse actions it took.

Defendant's Statement of the Case.

Defendant denies Plaintiff's claims.  First, with regard to Plaintiff's Office of Worker's

Compensation Claim, Defendant provided factual information to the Department of Labor that there was no record of Plaintiff working on the equipment that he allegd to have been repairing on the date he suffered the injury and that he did not report the injury shortly after it happened to his supervisor. Moreover, even though he filled out an injury form, when aasked whether he was alleging it was a workplace injury or not, and if he wished to proceed with his claim, Plaintiff took a period of time deciding whether to pursue the claim.

After he was injured however, Plaintiff produced medical records from his doctors imposing medical restrictions. Once Defendant received clarification on the nature of Plaintiff's restrictions, Plaintiff was given a temporary assignment to monitor inmate phone calls. Because the Plaintiff's condition did not improve and his restrictions were not lifted, Plaintiff remained on temporary assignment for approximately two years, well beyond the normal time period allowed for such assignments. During that time, Defendant periodically attempted to get more information concerning Plaintiff's medical status, but Plaintiff was often uncooperative in providing said information and submitting to fitness for duty examinations scheduled by Defendant. The result was that Defendant was not able to make timely decisions about Plaintiff's work assignment. Moreover, as an employee in a correctional setting surrounded by inmates, Plaintiff, like all employees who work in a correctional setting, was required by law to meet certain physical requirements. But he was unable to fulfill them in his current condition with restrictions and it did not appear that his condition would improve to allow him to do so.

When Defendant could no longer keep Plaintiff on a temporary assignment indefinitely, he was sent home on April 23, 2012 and informed that Defendant would continue to try to find another position for him that was consistent with his restrictions, if possible. In that regard, Defendant's HR manager worked with Plaintiff on several occasions to locate other positions in

4

the Department of Justice in which Plaintiff may have been able to work. Unfortunately, there were no other positions in the local commuting area for which Plaintiff was qualified and Plaintiff did not express a wish to relocate. At all times, Plaintiff was entitled to apply for disability retirement and any other benefits to which he believed he was entitled, with the Office of Personnel Management, another federal agency which makes decisions on federal employee benefits. Plaintiff was even advised by Defendant that he was eligible for disability retirement.

With regard to Plaintiff's request for training, as an inmate monitor, Plaintiff was not performing the normal duties of an Electronics Technician and therefore training in that area was not a priority.

With regard to Plaintiff's requests for leave, they were granted whenever Plaintiff provided documentation to justify the need for leave. All of the actions Defendant took were legitimate and justified, and none were taken due to discrimination or retaliation of any kind.

2. **A statement of the basis for federal subject matter Federal Jurisdiction.**

This court has jurisdiction of the claims in this complaint pursuant to Section 501 of the Rehabilitation Act of 1973, 29 U. S. C. § 791 (Rehabilitation Act) Section 717 of the Civil Rights Act of 1964, as amended, and 42 U. S. C. § 2000e *et seq.* (Title VII) 42 USC 2000e-16.

Defendant agrees that the Court has jurisdiction over claims brought pursuant to these statutes, but denies any liability whatsoever.

3. **A List of all pleadings raising the issues.**

   1) Plaintiff's Third Amended Complaint [D.E. 23]

   2) Defendant's Answer and Affirmative Defenses to Amended Complaint. [D.E. 24]

4. **A List of all pending motions**

    1) Plaintiff's Motion to File Amend Witness list [D.E. 36]

    2) Defendant's Motion for Summary Judgment [D.E. 43]

    3) Plaintiff's Second Motion to Seal Pursuant to Rule 5.4 [D.E. 57]. U.S. Magistrate Judge Chris McAliley granted this Motion in part in her Order on February 10, 2014. In this same order the Magistrate deferred ruling on the rest of the motion to the trial judge.

    4) Defendant's Motion in Limine [D.E. 58]

**5. A joint statement of stipulated facts which will require no proof at trial.**

    1) The Federal Detention Center in Miami (hereinafter "FDC" Miami) is an institution within the Federal Bureau of Prisons (hereinafter "BOP"). The BOP is a component of the Department of Justice ("DOJ").

    2) The Plaintiff, Derek Horne, race and color is African- American (Black).

    3) The Plaintiff was employed by Defendant as an Electronics Technician GS-11 Step 10 at the FDC Miami from October 29, 1996 until October 19, 2013. He worked in the Facilities Department at FDC Miami until April 23, 2012.

    4) During portions of the relevant time frame, Linda McGrew was the Warden of the FDC Miami, and a supervisor of the Plaintiff. Linda McGrew's race is African American.

    5) During portions of the relevant time frame, Warden Taylor was the Warden of the FDC Miami, and a supervisor of the Plaintiff. Warden Taylor's race is African American.

    6) During portions of the relevant time frame, Edwin Perez was one of the Associate Wardens at FDC Miami, and a supervisor of the Plaintiff. Edwin Perez is Hispanic.

7) During portions of the relevant time frame, Shawn Million was one of the Associate Wardens at FDC Miami, and a supervisor of the Plaintiff. Shawn Million's race is Caucasian.

8) During portions of the relevant time frame, Jose Velazquez was a first line supervisor of the Plaintiff at the Facilities Department at FDC Miami. Jose Velazquez is Hispanic.

9) During portions of the relevant time frame, Gary Hammond was the first and then second line supervisor of the plaintiff at the Facilities Department at FDC Miami. Gary Hammond's race is White.

10) During portions of the relevant time frame, Donald Flewellyn was the first and then second line supervisor of the plaintiff at the Facilities Department at FDC Miami. Donald Flewellyn's race is White.

11) The Plaintiff was placed on Temporary Alternative Duty (TAD) as of February 2010. The Plaintiff's TAD included assignments as a Phone Monitor, in the Human Resource Department, Monday through Friday, from 7:00am to 3:00pm. His job was to monitor inmate phone communications.

6. **A detailed Statement of contested facts that remain to be litigated at trial.**

Count 1 Race and Color discrimination

    a. Whether the Plaintiff was denied equal opportunities for wages and other terms and conditions of his employment by the defendant.

    b. Whether the Plaintiff's race and color (African –American Black) was a motivating factor that prompted the Defendant to take the action.

    c. Whether the Plaintiff suffered damages as a result of such action.

Count III Retaliation

    a. Whether the Plaintiff engaged in statutorily protected activity, that is, he in good faith asserted objectively reasonable complaints of discrimination prohibited by Federal Law [or requested a reasonable accommodation or a job reassignment for his disability.][1]

    b. That one or more adverse employment actions then occurred.

    c. That the adverse action was causally related to the Plaintiff's statutorily protected activities; and

    d. That the Plaintiff suffered damages as a proximate or legal result of such adverse activity.

Count IV For Disability Discrimination including Failure to reasonably accommodate disability

**Disability Discrimination**

    a. Whether the Plaintiff had a disability

    b. Whether the plaintiff was the subject of one or more adverse actions

    c. That Defendant took one or more of these adverse actions because of Plaintiff's disability

    d. That the Plaintiff suffered damages as a proximate or legal result of such adverse activity.

**Failure to provide reasonable accommodation**

    a. Whether the Plaintiff had a disability

    b. Whether the Plaintiff was a qualified individual

    c. Whether Defendant knew of Plaintiff's disability

    d. Whether a reasonable accommodation or job reassignment existed that would

---

[1] See issues of law.

      have allowed Plaintiff to perform the essential functions of the job; and

      Defendant failed to provide reasonable accommodation or job reassignment.

    That the Plaintiff suffered damages as a proximate or legal result

Count IV Hostile Work Environment

    a. Whether the Plaintiff was subject to a hostile or abusive work environment, as herein defined, because he had previously taken steps to enforce his lawful rights under Title VII of the Civil Rights Act, and the Rehabilitation Act and because of his race and disability; and

    b. Whether such hostile or abusive work environment was created or permitted by a supervisor with immediate or successively higher authority over the Plaintiff; whether the supervisor failed to take prompt remedial action to eliminate the hostile work environment and

    c. Whether the Plaintiff suffered damages as a proximate or legal result of such hostile or abusive work environment.

Count VI Injunctive Relief

    Whether Plaintiff is entitled to injunctive relief and whether he can show the following elements and

    a. There is a substantial likelihood for success on the merits of this case, and

    b. Irreparable injury will be suffered by the Plaintiff unless an injunction issues; and

    c. The threatened injury to the Plaintiff is greater than any damage the proposed injunction may cause the Defendant and

   d. The Injunction when it is issued will not deserve the public interest.[2]

All Counts

 Whether the Plaintiff is entitled to attorney's fees and, if so, the amount.

**7. A concise statement of issues of law on which there is agreement**

 Jurisdiction in this court is appropriate.

8. **A concise statement of issues of law that remain for determination by the Court**

 Whether plaintiff can recover back or front pay (decreased pension benefits).

 Whether the damages received by the Plaintiff for front pay (decreased pension benefits) or back pay are subject to the Collateral Source Rule.

 Whether requesting reasonable accommodation or job reassignment constitute protected activity

 If Plaintiff prevails at trial, the amount of attorneys fees and cost to award to the Plaintiff pursuant to Title VII or the Rehabilitation Act.

 Whether the Court will grant's Defendant's Motion  for Summary Judgment as pending before this court [ D.E. 43]

**9. Exhibits**

 See plaintiff's Exhibits attached hereto as Exhibit A.

 See Defendant's exhibits attached as Exhibit B.

**10. Witnesses**

 See Plaintiff's Exhibits attached hereto as Exhibit C.

 See Defendant's Exhibits attached hereto as Exhibit D.

---

[2] The parties will be filing jury instructions pursuant to the Court's Scheduling Order and therefore the formulation of the claims and defenses will be provided in more detail there.  Defendant does not agree that this portion of the Pre-Trial Stipulation contains all of the elements that Plaintiff is required to prove.

**11. Estimated Trial Time:**

5 days

**12. Each party's estimate of the maximum amount of attorneys fees properly allowable if any.**

The Plaintiff's attorney fees are estimated at $ 487,000 for administrative, pretrial, trial, and post-trial motions.

                                                MERKLE MAGRI & MEYTHALER
                                                Attorneys for Plaintiff

By:     **/s/ Joseph D. Magri**
           Joseph D. Magri
           Florida Bar No. 0814490
           Merkle Magri & Meythaler, P.A.
           5601 Mariner Street, Suite 400
           Tampa, Florida 33609
           Tel: (813) 281-9000
           Fax: (813-281-2223
           Attorney for Plaintiff
           Email: jmagri@merklemagri.com

WILFREDO A. FERRER
UNITED STATES ATTORNEY

Attorney for Defendant

By:     **/s/ Stephanie I. R. Fidler**
           Stephanie I. R. Fidler
           Assistant United States Attorney
           Fla. Bar No. 563749

           99 N.E. 4th Street, 3rd Floor
           Miami, Florida 33132
           Tel: (305) 961-9073
           Fax: (305) 530-7139
           Email: Stephanie.fidler@usdoj.gov