UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 12-CIV-23507-Martinez/Goodman

DEREK T. HORNE
     Plaintiff,

vs.

WILLIAM BARR, Attorney General
of the United States of America,
     Defendant.
_____/

## <u>JURY INSTRUCTIONS</u>

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished, you will go to the jury room and begin your discussions, sometimes called deliberations.

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case. The following is a joint statement of stipulated fact:

1)      The Federal Detention Center in Miami (hereinafter "FDC" Miami) is an institution within the Federal Bureau of Prisons (hereinafter "BOP"). The BOP is a component of the Department of Justice ("DOJ").

2)      The Plaintiff, Derek Horne, race and color is African-American (Black).

3)      The Plaintiff was employed by Defendant as an Electronics Technician GS-11 Step 10 at the FDC Miami from October 29, 1996 until October 19, 2013. He worked in the Facilities Department at FDC Miami until April 23, 2012.

4)      During portions of the relevant time frame, Linda McGrew was the Warden of the FDC Miami, and a supervisor of the Plaintiff. Linda McGrew's race is African American.

5)      During portions of the relevant time frame, Warden Taylor was the Warden of the FDC Miami, and a supervisor of the Plaintiff. Warden Taylor's race is African American.

6)      During portions of the relevant time frame, Edwin Perez was one of the Associate Wardens at FDC Miami, and a supervisor of the Plaintiff. Edwin Perez is Hispanic.

7)      During portions of the relevant time frame, Shawn Million was one of the Associate Wardens at FDC Miami, and a supervisor of the Plaintiff. Shawn Million's race is Caucasian.

8)      During portions of the relevant time frame, Jose Velazquez was a first line supervisor of the Plaintiff at the Facilities Department at FDC Miami. Jose Velazquez is Hispanic.

9)    During portions of the relevant time frame, Gary Hammond was the first and then second line supervisor of the plaintiff at the Facilities Department at FDC Miami. Gary Hammond's race is White.

10)    During portions of the relevant time frame, Donald Flewellyn was the first and then second line supervisor of the plaintiff at the Facilities Department at FDC Miami. Donald Flewellyn's race is White.

11)    The Plaintiff was placed on Temporary Alternative Duty (TAD) as of February 2010. The Plaintiffs TAD included assignments as a Phone Monitor, in the Human Resource Department, Monday through Friday, from 7:00am to 3:00pm. His job was to monitor inmate phone communications.

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Some of the witnesses in this case have testified through deposition testimony. The testimony of those witnesses was presented to you by reading the transcript. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a governmental entity or agency is involved as a party must not affect your decision in anyway. A governmental agency and all other persons stand equal before the law and must be dealt with as   equals in a court of justice. When a governmental agency is involved, of course, it may act only through people as its employees; and, in general, a governmental agency is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the governmental agency.

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact.  There's no legal difference in the weight you may give to either direct or circumstantial evidence.

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness seem to have a good memory?

- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget something or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

In this case it is the responsibility of the Plaintiff to prove every essential part of his claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiff making that claim or contention.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claims by a preponderance of the evidence, you should find for the Defendant as to that claim.

In this case the Plaintiff makes various claims under Title VII of the Federal Civil Rights Act which prohibits employers from discriminating against their employees in the terms and conditions of their employment because of the employee's gender, religion, race, color, age or national origin and prohibits employers from retaliating against employees for seeking to enforce the employee's lawful rights under Title VII or opposing a practice made unlawful under Title VII. In this case, the Plaintiff also makes various claims under the Rehabilitation Act which prohibits employers from discriminating against their employees in the terms and conditions of their employment because of the employee's disability; and prohibits employers from retaliating against employees for seeking to enforce the employee's lawful rights under the Rehabilitation Act or opposing a practice made unlawful under the Rehabilitation Act.

Specifically, Plaintiff claims he was discriminated against on the basis of race (black), color (black) and retaliated against for prior EEO activity when his Facilities Manager, Gary Hammond, denied he was injured on the job and provided misleading information concerning his claim.  He claims he was discriminated against on the basis of race (black), color (black), disability and retaliated against when placed on light duty; had his physical movement restricted to the second floor; restricted from the staff cafeteria and his former work area; told he was no longer part of the Facilities Department, and not entitled to review files concerning electronics; denied

training; and told a letter from his doctor submitted three and a half months before had insufficient information and he needed to have his doctor supply more information in less than two weeks.

Plaintiff claims he was discriminated against and retaliated against on the same basis, and subjected to a hostile work environment when he was given only a satisfactory evaluation, denied leave from the voluntary leave bank program (VLBP) for fictitious reasons, causing him to lose pay; denied the vast majority of a Family Medical Leave Act request and placed on AWOL for three quarters of an hour.

Plaintiff claims that personnel in the Warden's office refused to accept requested documents from him and refused to provide receipts for records he gave them; Plaintiff claims he was not allowed to perform any of his former job duties, restricted from electronics files; had his December 28, 2010 reasonable accommodation request denied on May 5, 2011 without being given an interactive process for job restructuring or reassignment; placed on AWOL; had his medical records improperly disclosed to his immediate supervisor; received satisfactory evaluations; denied Facilities Department training and not notified of training important to his electronics technician job; mishandling FMLA requests; not scheduled for firearms training; received a March 12, 2012 denial of his reasonable accommodation request without being given an  interactive process for job restructuring or reassignment; involuntarily reassigned to a less desirable location,

and on April 23, 2012 sent home without pay or benefits until, he renounced his disability and was involuntarily escorted from the building without being given the rights he had as a federal employee, and subsequently denied duties, pay and benefits for over 17 months.

In this case, Plaintiff claims that Defendant violated the Federal Civil Rights statutes that prohibit employers from discriminating against employees in the terms and conditions of employment because of their race and color.

To succeed on his claim against Defendant, Plaintiff must prove each of the following facts by a preponderance of the evidence:

Plaintiff suffered one or more adverse employment actions by being denied by an equal  opportunity for wages and other terms and conditions of employment as set forth   above.

Plaintiff's race and color (African- American, Black) was a motivating factor that prompted Defendant to take one or more of these actions.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

If you find Plaintiff suffered one or more adverse employment actions by being denied by the Defendant an equal opportunity for wages and other terms and conditions of employment as set forth above, you must decide whether Plaintiff's race and color was a motivating factor in the decision.

To prove that race and color was a motivating factor in Defendant's decision, Plaintiff does not have to prove that his race and color were the only reasons that Plaintiff suffered one or more adverse actions.  It is enough if Plaintiff proves that

race /color influenced the decision. If Plaintiff's race/color made a difference in Defendant's decision you may find that it was a motivating factor in the decision.

Defendant claims that Plaintiff's race/color was not a motivating factor in any adverse action and that such actions were taken for legitimate business reasons. An employer may not discriminate against an employee because of the employee's race/color or for any other discriminatory or retaliatory reason, but the employer may take such an action that affects an employee's wages or other terms and conditions of employment for any other reason, good or bad, fair or unfair. If you believe Defendant's reasons for taking each action and you find that Defendant's decision was not motivated by Plaintiff's race/color, you must not second guess Defendant's decision, and you must not substitute your own judgment for Defendant's judgment—even if you disagree with it.

As I have explained, Plaintiff has the burden to prove that his race/color was a motivating factor in Defendant taking one or more of the adverse actions set forth above and I have explained to you that evidence can be direct or circumstantial. To decide whether Plaintiff's race/color was a motivating factor in Defendant's decision to take one or more of the adverse actions set forth above you may consider the circumstances of Defendant's decision. For example, you may consider whether you believe the reason[s] Defendant gave for the decision.  If you do not believe the reasons he gave for the decision, you may consider whether the reason[s] were so

unbelievable that they were a cover-up to hide the true discriminatory reasons for the decision.

The plaintiff can show pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

If one of Plaintiff's supervisors, including Gary Hammond, was involved in any of the Defendant's adverse actions, his involvement can be a "motivating factor" behind Defendant's employment decision—even if they did not make the ultimate decision to take the adverse action.

But Plaintiff's race/color can be a motivating factor in Defendant's s decision only if you find that Plaintiff has proved each of the following by a preponderance of the evidence:

    (a)    the supervisor acted with the intent that the adverse action be taken (which means that the supervisor wanted Defendant to take the adverse action).

    (b)    Plaintiff's race/color was a motivating factor behind the supervisor's actions; and

    (c)    there was a direct relationship between the supervisor's actions and the adverse action against the Plaintiff .

If you find for Plaintiff and against Defendant in this defense, you must consider Plaintiff's compensatory damages.

When considering the issue of Plaintiff's compensatory damages, you should determine what amount, if any, has been proved by Plaintiff by a preponderance of the evidence as full, just and reasonable compensation for all of Plaintiff's damages as a result of Defendant's actions, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increase to penalize Defendant. Also compensatory damages must not be based on speculation or guesswork.

I will instruct you on damages shortly.

In this case, Plaintiff claims that Defendant discriminated against Plaintiff because he had a "disability" within the meaning of the Rehabilitation Act as set forth above. Defendant denies Plaintiff's claim.

Under the Rehabilitation Act it is unlawful for an employer to take an adverse action because of a person's disability.

Claims under the Rehabilitation Act apply the same substantive standards as the American Disabilities Act ("ADA").

To succeed on his claim, Plaintiff must prove all the following facts by a preponderance of the evidence:

First:   Plaintiff had a disability;

Second: Plaintiff was a qualified individual;

Third:   Defendant takes one or more adverse action against the Plaintiff; and

Fourth: Defendant took that action because of Plaintiff's disability.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

Definition of "Disability"

The first element requires that Plaintiff prove by a preponderance of the evidence that he had a disability. A "disability" is a physical or mental impairment that substantially limits one or more major life activities.

A "physical impairment" is a condition that prevents the body from functioning normally. A "mental impairment" is a condition that prevents the mind from functioning normally.

A "major life activity" is an activity that is centrally important to everyday life, including the operation of major bodily functions.

Plaintiff claims that each of activities at issue is a major life activity, and you must decide whether it is. Major life activities include caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. Major life activities also include functions of the immune system; normal cell growth; and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

An impairment "substantially limits" a major life activity if it prevents or significantly restricts a person from performing the activity, compared to an average person in the general population. An impairment that substantially limits one major life activity is a disability even if it does not limit any other major life activity.

To decide whether Plaintiff's shoulder, neck and ears substantially limits his bending, lifting, raising arms above the head, and hearing and balance you should consider, as compared to most people in the general population:

(a) the condition under which Plaintiff performs bending , lifting, raising arms above the head, and hearing and balance;

(b) the manner in which Plaintiff performs bending , lifting, raising arms above the head, and hearing and balance;

(c) how long it takes Plaintiff to perform bending , lifting, raising arms above the  head, and hearing and balance.

Definition of "Qualified Individual"

The second element requires that Plaintiff prove by a preponderance of the evidence that he was "qualified" for the job at the time of the challenged employment decision. This means that Plaintiff must show that he had the skill, experience, education, and other job-related requirements for an Electronics Technician or a phone monitor at the Bureau of Prisons and could do the essential functions of the job—with or without reasonable accommodation.  In this case, Plaintiff claims that he was able to perform the essential functions of electronics technician job with modifications, allowing him to work on and repair electronics which were posted or mounted above his head.  Defendant claims that Plaintiff was unable to perform Electronics Technician even with the accommodation provided, for he had to be able to respond to law enforcement emergencies and that this function was essential to do the electronics technician job in a correctional institution setting. Plaintiff claims that this is not an essential function of the job. He also claims that he could have

responded to emergencies as an electronics technician. Plaintiff also claims that he performed the phone monitoring job without need for an accommodation and that the phone monitor job did not require responding to emergencies. To the extent that Plaintiff claims that a particular function is not essential to the job, he must prove that the function is not essential.

The essential functions of a position are the fundamental duties of that position. The term "essential functions" does not include the position's marginal functions. To decide whether a function is essential to a particular position, you may consider the following factors:

(a)     whether the function's performance is the reason the position exists;

(b)     whether there are a limited number of employees available to perform the function;

(c)     whether the function is highly specialized so that an employee in the position is hired for the ability to perform the function;

(d)     Defendant's judgment about which functions are essential to the position;

(e)     written job descriptions for the position;

(f)     the amount of time an employee in the position spends performing the function;

(g)     the consequences of not requiring an employee in the position to perform the function;

(h)     the terms of a collective-bargaining agreement;  or

(i)     whether others who held the position were required to perform the function.

No single factor controls your decision. You should consider all the evidence to decide whether a function is essential to the job. To decide whether Plaintiff was qualified to perform the essential job functions, you should consider his abilities as they existed when the Defendant took the adverse actions at issue.

Definition of "Because of Plaintiff's Disability"

Finally, if you find that Plaintiff had a "disability," was a "qualified individual," and that  the Defendant took one or more adverse actions against him you must decide whether  Defendant took that action "because of" Plaintiff's disability.  Put another way, you must decide whether Plaintiff's disability was the main reason for Defendant's decision.

To determine that the Defendant took one or more adverse actions against him and denying his request for reasonable accommodation because of Plaintiff's disability, you must decide that Defendant would not have taken each of those adverse actions if Plaintiff had not had a disability but everything else had been the same.

The Defendant denies that it took any alleged adverse action because of Plaintiff's disability and claims that it made the decisions for other reasons.

An employer may not discriminate or retaliate against an employee because of the employee's disability, but an employer may take action against an employee for any other reason, good or bad, fair or unfair. If you believe Defendant's reasons for his decision and find that his decision was not because of Plaintiff's disability, you must not second guess that decision, and you must not substitute your own judgment for Defendant's judgment—even if you do not agree with it.

As I have explained, Plaintiff has the burden to prove that Defendant took one or more adverse actions against him because of Plaintiff's disability. I have explained to you that evidence can be direct or circumstantial. To decide whether Defendant took one or more of those actions because of Plaintiff's disability, you may consider the circumstances of Defendant's decision. For example, you may consider whether you believe the reasons Defendant gave for the decision. If you do not believe the reasons he gave for the decision, you may consider whether the reasons were so unbelievable that they were a cover-up to hide the true discriminatory reason for the decision.

The plaintiff can show pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

In this case, Plaintiff claims that Defendant discriminated against Plaintiff because of his disability by failing to provide a reasonable accommodation for his disability within the meaning of the Rehabilitation Act.

Defendant denies Plaintiff's claim and asserts that Plaintiff could not be accommodated since he could not meet the requirements of the electronics technician position without assigning many of his duties to other employees and he could not fulfill the physical requirements for employees working in a correctional institution.

Under the Rehabilitation act and the Americans with Disabilities Act (ADA), if an employer knows that an employee has a disability and needs reasonable accommodations to perform the essential functions of his job, the employer must provide a reasonable accommodation.

To succeed on his claim, Plaintiff must prove each of the following facts by a preponderance of the evidence:

First:  Plaintiff had a disability;

Second:   Plaintiff was a qualified individual;

Third:  Defendant knew of Plaintiff's disability;

Fourth:  Plaintiff requested an accommodation;

Fifth:    A reasonable accommodation existed that would have allowed Plaintiff to perform the essential functions of the job; and

Sixth:   Defendant failed to provide a reasonable accommodation.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

I have previously instructed you on the first two elements.

For the third element, Plaintiff must prove by a preponderance of the evidence that Defendant knew about his disability.

For the fourth element, Plaintiff must prove by a preponderance of the evidence that he requested an accommodation.

Put another way, the third and fourth elements require Plaintiff to prove that he informed Defendant of both the substantial limitations his disability created and the need for an accommodation.

For the fifth element, Plaintiff must prove by a preponderance of the evidence that a reasonable accommodation existed that would have allowed him to perform the essential functions of the job.

For the sixth element, Plaintiff must prove by a preponderance of the evidence that Defendant failed to provide a reasonable accommodation.

In this case, Plaintiff claims that he would have been able to perform the essential functions of Electronics Technician at the Bureau of Prisons with a reasonable accommodation which allowed him to work on electronics posted or mounted above his head.  The Plaintiff claims he could have performed the phone

monitoring job with or without accommodation. Defendant claims that Plaintiff was unable to perform the essential job functions—even with a reasonable accommodation because he could not do the tasks required by an electronics technician without reassigning some of those tasks to other employees which would cause an undue hardship and he could not respond to institutional emergencies as required for all employees working in a correctional institution. Defendant also claims that there is no phone monitoring position, that was a temporary accommodation afforded to Plaintiff and Defendant is not required to create such a position to accommodate Plaintiff.

A "reasonable accommodation" is a modification or adjustment of the employer's ordinary work rules, facilities, or terms and conditions of employment that the employer can make without causing an undue hardship.

A reasonable accommodation may include:

(a) making existing facilities readily accessible to, and usable for Plaintiff

(b) job restructuring;

(c) part-time or modified work schedules;

(d) reassignment to a vacant position;

(e) acquiring or modifying equipment or devices;

(f) adjusting or modifying examinations, training  materials, or policies;

(g) providing qualified readers or interpreters; or

(h) other similar accommodations for individuals with disabilities.

In this case, Plaintiff also claims that Defendant should have accommodated Plaintiff by reassigning him to another position. Reassignment may be a reasonable accommodation under certain circumstances—but an employer is not required to create or reestablish a job where one would not otherwise exist. Also, an employer is not required to promote an employee with a disability as an accommodation. To show that reassignment to another job would have been a reasonable accommodation, Plaintiff must prove that the job was vacant or available and that he was qualified for it.

With regard to disability, it is well settled that the denial of reasonable accommodation requests could be disability discrimination. Similarly, unreasonable delays in granting those requests could be disability discrimination.

In this case, Plaintiff also claims that Defendant should have accommodated Plaintiff by requiring another employee to perform certain duties of his job that Plaintiff could not perform because of his disability. Reallocation of marginal job duties can be a reasonable accommodation—but an employer does not have to transfer any essential job duties to another employee. If the duties Plaintiff wanted Defendant to reallocate were essential functions of Plaintiff's job, then that is not a reasonable accommodation. If Plaintiff wanted Defendant to reallocate only marginal job duties to another employee, then that reallocation may be a reasonable

accommodation—but only if the reallocation would not impose an excessive burden on the employer or the other employee.

To decide whether Defendant denied Plaintiff a reasonable accommodation, you should keep in mind that while an employer is required to provide [a] reasonable accommodation[s] that would allow Plaintiff to perform the essential job functions, the employer is not required to provide the particular accommodation that Plaintiff prefers or requests. There may be more than one reasonable accommodation available under the circumstances, and if Plaintiff refused to accept an accommodation offered by Defendant that would have allowed him to perform the essential job functions, Plaintiff has not proved that Defendant failed to provide a reasonable accommodation.

Also, just because Defendant may have offered a certain accommodation to Plaintiff or another employee in the past does not mean that Defendant must forever extend the same accommodation to Plaintiff or that the accommodation is necessarily reasonable under the ADA/Rehabilitation Act Otherwise, an employer would be reluctant to offer benefits or concessions to disabled employees for fear that by providing the benefits or concession one time, the employer would be required to provide that accommodation in the future. Because Plaintiff has requested an accommodation that Defendant has provided to Plaintiff or another employee in the past does not necessarily mean that the particular accommodation

is a reasonable one. Instead, you must determine its reasonableness under all the

evidence.

In this case, the Plaintiff claims that the Defendant retaliated against the Plaintiff because he took steps to enforce his lawful rights under Title VII and the Rehabilitation Act.

Laws that prohibit discrimination in the workplace also prohibit an employer from taking any retaliatory action against an employee because the employee has asserted rights or made complaints under those laws.

An employee may make a discrimination complaint as a means to enforce what he believed in good faith to be his lawful rights. So, even if a complaint of discrimination against an employer is later found to be invalid or without merit, the employee cannot be penalized in retaliation for having made such a complaint if you find that the employee made the complaint as a means of seeking to enforce what the employee believed in good faith to be his lawful rights. To establish "good faith," however, it is insufficient for the Plaintiff merely to allege that his belief in this regard was honest and bona fide; the allegations and the record must also establish that the belief, though perhaps mistaken, was objectively reasonable.  The Plaintiff claims that the Defendant took one or more of the previously described adverse actions because of his EEO activity or his disability claims under the Rehabilitation Act.

The Defendant denies Plaintiff's claim and asserts that all of its actions were reasonable and for legitimate business purposes.

To succeed on his claim, Plaintiff must prove each of the following facts by a preponderance of the evidence:

First:   Plaintiff engaged in a protected activity;

Second:   Defendant then took an adverse employment action;

Third:  Defendant took the adverse employment action because of Plaintiff's

protected activity; and

Fourth:  Plaintiff suffered damages because of the adverse employment action.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

For the first element, Plaintiff claims that he engaged in protected activity when he filed several complaints for discrimination based on race/ color, disability and retaliation. If you find that the Plaintiff filed several complaints for discrimination race/color, disability and retaliation that action is "protected activity."

Requests for reasonable accommodation are protected EEO activity and retaliation can be based on, among other things, a request for reasonable accommodation.

For the second element, Plaintiff claims that Defendant took an adverse employment action against him as described above. You must decide whether such actions are adverse employment actions.

For a retaliation claim, an "adverse employment action" is any type of action that would have made a reasonable employee reluctant to make or support a charge of discrimination. Put another way, if a reasonable employee would be less likely to complain about or oppose alleged discrimination because he knew that Defendant would take one or more of these adverse actions, then that action is an adverse employment action.   If the employment action would not make it less likely for a reasonable employee to make complaints about or oppose the alleged discrimination, it is not an adverse employment action.

For the third element, if you find that Plaintiff engaged in protected activity and that Defendant took an adverse employment action against him, you must decide whether Defendant took that action because of Plaintiff's protected activity. Put another way, you must decide whether Plaintiff's protected activity was the main reason for Defendant's decision.

To determine that Defendant took an adverse employment action because of Plaintiff's protected activity, you must decide that Defendant would not have taken the action had Plaintiff not engaged in the protected activity but everything else had been the same.

Defendant claims that it did not take adverse actions against the Plaintiff because of Plaintiff's protected activity and that he took the action for another reason. An employer may not take an adverse action against an employee because

of the employee's protected activity. But an employer may take actions against an employee for any other reason, good or bad, fair or unfair. If you believe Defendant's reason for his decision and you find that Defendant did not make his decision because of Plaintiff's protected activity, you must not second guess that decision, and you must not substitute your own judgment for Defendant's judgment—even if you do not agree with it.

As I have explained, Plaintiff has the burden to prove that the Defendant took one or more adverse actions against the Plaintiff because of Plaintiff's protected activity. I have explained to you that evidence can be direct or circumstantial. To decide whether the Defendant took one or more adverse action against the Plaintiff was because of Plaintiff's protected activity, you may consider the circumstances of Defendant's decision. For example, you may consider whether you believe the reasons that Defendant gave for the decision. If you do not believe the reasons that he gave for the decision, you may consider whether the reasons were so unbelievable that they were a cover-up to hide the true retaliatory reasons for the decision.

The plaintiff can show pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

For the fourth element, you must decide whether Defendant's acts were the proximate cause of the damages that Plaintiff sustained. Put another way, if

Defendant had not taken one or more adverse actions against the Plaintiff, would these damages have occurred?

If you find that Defendant's acts were the proximate cause of damages that Plaintiff sustained, you must determine the amount of damages.

If you find in Plaintiff's favor for each fact he must prove, you must consider Plaintiff's compensatory damages.  I will instruct you on damages shortly.

In this case, Plaintiff claims that Defendant violated Federal Civil Rights statutes that prohibit employers from discriminating and retaliating against employees in the terms and conditions of employment because of their protected activity as previously defined to include race, color, disability or prior EEO or Rehabilitation activity. Title VII and the Rehabilitation Act prohibit the creation of a hostile work environment caused by harassment because of an employee's protected activity.

Specifically, Plaintiff claims that his supervisors harassed him because of his race/color African American Black, disability or EEO activity ("protected activity") and that the harassment created a hostile work environment.

Defendant denies Plaintiff's claims.

To succeed on his claim against Defendant, Plaintiff must prove each of the following facts by a preponderance of the evidence:

First:  Plaintiff's supervisor harassed him because of his protected activity;

Second:  The harassment created a hostile work environment for Plaintiff; and

Third:  Plaintiff suffered damages because of the hostile work environment.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

A "hostile work environment" created by harassment because of protected activity exists if:

(a) Plaintiff was subjected to offensive acts or statements about any components of that protected activity—even if they were not specifically directed at him;

(b) Plaintiff did not welcome the offensive acts or statements, which means that Plaintiff did not directly or indirectly invite or solicit them by his own acts or statements;

(c) the offensive acts or statements were so severe or pervasive that they materially altered the terms and conditions of Plaintiff's employment;

(d) a reasonable person—not someone who is overly sensitive—would have found that the offensive acts or statements materially altered the terms and conditions of the person's employment; and

(e) Plaintiff believed that the offensive acts or statements materially altered the terms and conditions of his employment.

To determine whether the conduct in this case was "so severe or pervasive" that it materially altered the terms and conditions of Plaintiff's employment, you should consider all the circumstances, including:

(a) how often the discriminatory conduct occurred;

(b) its severity;

36

(c) whether it was physically or psychologically threatening or humiliating; and

(d) whether it unreasonably interfered with Plaintiff's work performance.

A "material alteration" is a significant change in conditions. Conduct that amounts only to ordinary socializing in the workplace does not create a hostile work environment. A hostile work environment will not result from occasional horseplay, offhand comments, simple teasing, sporadic use of offensive language, or language, or occasional jokes related to race/religion/sex/national origin. But discriminatory intimidation, ridicule, insults, or other verbal or physical conduct may be so extreme that it materially alters the terms and conditions of employment.

If you find that one or more of the Plaintiff's supervisors harassed the Plaintiff because of his protected activity created and carried on the hostile work environment, and that the harassment created a hostile work environment, then you must decide whether he suffered damage as a result.

If the damages would not have existed except for the hostile work environment, then you may find that Plaintiff suffered those damages because of the hostile work environment. I will instruct you on damages shortly.

When considering the issue of Plaintiff's compensatory damages, you should determine what amount, if any, has been proven by Plaintiff by a preponderance of the evidence as full, just and reasonable compensation for all of Plaintiff's damages as a result of the Defendant's conduct which you found, in the case of race or color, was a motivating factor in causing damage to the Plaintiff, or in the case of damages due to disability discrimination or retaliation was because of such discrimination or retaliation. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Defendant.  Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Plaintiff has proved them by a preponderance of the evidence, and no others: emotional pain and mental anguish.

To determine whether and how much Plaintiff should recover for emotional pain and mental anguish, you may consider both the mental and physical aspects of injury—tangible and intangible. Plaintiff does not have to introduce evidence of a monetary value for intangible things like mental anguish. You will determine what amount fairly compensates him for his claims. There is no exact standard to apply, but the award should be fair in light of the evidence.

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate"

those damages. For purposes of this case, the duty to mitigate those damages requires Plaintiff to be reasonably diligent in seeking substantially equivalent employment to the position he held with Defendant. To prove that Plaintiff failed to mitigate damages, Defendant must prove by a preponderance of the evidence that (1) a position comparable to the position Plaintiff held with Defendant was available and (2) Plaintiff did not make reasonably diligent efforts to obtain it. If however, Defendant shows that Plaintiff did not make reasonable efforts to obtain any work, then Defendant does not have to prove that comparable work was available.  If you find that Defendant proved by a preponderance of the evidence that Plaintiff failed to mitigate damages, then you should reduce the amount of Plaintiff's damages by the amount that could have been reasonably realized if Plaintiff had taken advantage of an opportunity for substantially equivalent employment.

If you find that Plaintiff has proved each of the elements he must prove on any claim or claims, you must decide the issue of his compensatory damages.

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous—in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room, and not be shared with anyone, including me, in your note or question.